RANDY S. GROSSMAN
United States Attorney
Brandon J. Kimura
Assistant U.S. Attorney
California State Bar No.: 241220
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9614

Attorneys for Plaintiff
The United States of America

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID LEMONT HILL,<br><br>Defendant. | Case No.: 21CR0107-WQH<br><br>**UNITED STATES' SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |

After testimony from multiple witnesses, Defendant David Lemont Hill ("Defendant") argues that this Court should not credit Deputy Alegria's testimony that Defendant was speeding on the night of his arrest, justifying the traffic stop that led to the discovery and seizure of the firearm in this case.

Because the experienced deputy's observations are supported by the facts, including Defendant's own statements and admissions, and because there is no reliable evidence to rebut Deputy Alegria's testimony, this Court should find that he reasonably and in good faith believed that Defendant violated the posted 45 mph speed limit, justifying the traffic stop.

//
//
//
//

# I
# STATEMENT OF CASE

The United States incorporates by reference the "Statement of the Case" filed in its Response in Opposition to Defendant's Motion to Suppress in this case. Dkt. 42, United States' Response in Opposition.

# II
# STATEMENT OF FACTS

The United States incorporates by reference the "Statement of Facts" filed in its Response in Opposition to Defendant's Motion to Suppress in this case. Dkt. 42, United States' Response in Opposition.

# III
# ARGUMENT

Defendant argues that this Court cannot rely on the observations of Deputy Alegria that Defendant was speeding on the night of his arrest. *See* Dkt. 61, Def.'s Mot. to Suppress. Thus, he argues, the United States cannot show probable cause to initiate the traffic stop. *Id*. at 5.

Defendant's motion fails first because it uses the wrong standard in this case. To initiate a traffic stop, officers need only meet the "reasonable suspicion" requirement. *See Kansas v. Glover*, 140 S. Ct. 1183, 1185, 206 L. Ed. 2d 412 (2020). Therefore, the United States does not need to prove that Defendant was *actually* speeding, it need only prove that Deputy Alegria *reasonably believed* that Defendant was speeding. Next, there are ample facts (including Defendant's admissions) and case law supporting Deputy Alegria's determination that Defendant was speeding. Finally, Mr. Gayner's testimony, based on estimates, approximations, and model specifications, is inherently

unreliable. Thus, it cannot rebut Deputy Alegria's speed estimate. For all of these reasons, Defendant's motion to suppress should be denied.

A. **Traffic Stops Require Reasonable Suspicion**

First, Defendant incorrectly states that officers must establish probable cause of a traffic violation in order to justify a stop. *See* Supp. Mot. to Suppress, Dkt. 61, at pg. 5 (citing *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995)).

As an initial matter, the citation to *Wilson* appears to be erroneous as that case concerned the "knock and announce" principle prior to entering a defendant's home. *See id*. It does not concern or discuss traffic stops, the reasonable suspicion standard, or even the probable cause standard. *Id*.

Regardless, the Supreme Court recently reconfirmed that officers may, "initiate a brief investigative traffic stop when he has a particularized and objective basis to suspect legal wrongdoing." *Kansas*, 140 S. Ct. at 1185 (quotation and citations omitted); *see also United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006) ("An investigatory stop of a vehicle is reasonable under the Fourth Amendment if the officer reasonably suspects that a traffic violation has occurred."); *Williams v. Seals*, No. 18-15059, 2020 WL 1066051 (9th Cir. Mar. 5, 2020).

In determining whether an officer has "reasonable suspicion" of criminal activity, the Court noted that the "standard depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" and reaffirmed that courts "cannot reasonably demand scientific certainty where none exists." *Kansas*, 140 S. Ct. at 1185 (quotation and citations omitted).

The reasonable suspicion inquiry falls considerably short of 51% accuracy. *Id*. (quotation and citations omitted). Indeed, the Court has explicitly stated that "[t]o be

reasonable is not to be perfect," and that the Fourth Amendment allows for "mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (quotation and citations omitted).

As applied, this Court need not find that Defendant was actually speeding, but only that Deputy Alegria *reasonably believed* Defendant was speeding. *See United States v. Twilley*, 222 F.3d 1092, 1096 n.1 (9th Cir. 2000) ("A factual belief that is mistaken, but held reasonably and in good faith, can provide reasonable suspicion for a traffic stop.");*United States v. Quintero-Bernal*, 287 F. Supp. 3d 1084, 1090 (S.D. Cal. 2017).

B. **Deputies Alegria had Reasonable Suspicion to Believe that Defendant was Speeding**

Next, Defendant argues that Deputy Alegria speed estimate is not "reasonably trustworthy" arguing that he lacks specialized training, testing of his estimates, and that the circumstances of his observation prevents this Court from relying upon his conclusion that Defendant was speeding. *See* Supp. Mot. to Suppress, Dkt. 61, at pgs. 6-8. Contrary to Defendant's argument, the record shows that Deputy Alegria is an experienced and well-trained traffic patrol officer, was periodically tested on his visual speed estimates, and the circumstances of his observations supported his speed estimate.

First, Deputy Alegria is a 7.5-year law enforcement veteran who has passed the 6-month academy to join the San Diego Sheriff's Department. Dkt. 51("Transcript 1") at pg. 5, lns. 1-14. He has spent 5 years on patrol duty. *Id*. at lns. 15-16. Approximately 80% of patrol duty deals with traffic enforcement in a marked patrol vehicle. *Id*. at pg.

6, lns. 2-7. Of his traffic enforcement duties, over 50% deal with speed related violations. *Id*. at pg. 6, lns. 15-19.

Deputy Alegria's speed estimates were also periodically tested as part of his continuing training, and he regularly observed traffic and stopped others for speeding violations:

> Q: And you estimated the Camero's [sic] speed based on your training and experience?
> A: Yes, ma'am.
> Q: Can you describe for me the type of training that you received with respect to estimating speed?
> A: Well, just as far as every two years with our continuing training, we drive our vehicles at a high rate of speed through our courses that we have setup, so we accelerate to a high rate of speed and slow down to see our radar.
> On top of that, driving my patrol vehicle throughout the day, I don't want to say the entire shift, on the road, just I get my experience there of knowing speeds.
> Q: So the experience you are describing is about how fast you are going in your own car?
> A: That and on top of, I would say, stopping other people as well.

*Id*. at pg. 39, lns. 7-22. Indeed, Deputy Alegria spends between 8-10 hours of his 12-hour shifts observing traffic. *Id*. at pg. 6, lns. 8-14.

Finally, the circumstances of Deputy Alegria's observations supported his speed estimate. First, this was an area Deputy Alegria was extremely familiar with, having patrolled it for almost 3 years. *Id*. at pg. 7, lns. 7-15. Next, Deputy Alegria clearly recalled Defendant's vehicle and another passing him in the opposite direction at a high rate of speed, at approximately 65 mph or 20 mph more than the posted speed limit. *Id*. at pg. 7, ln. 16 to pg. 8, ln. 11, pg. 12, lns. 9-11. Deputy Alegria's observation of Defendant's vehicle was clear, with nothing to obstruct his view. *See id*. pg. 37, lns. 13-

22. Deputy Alegria was able to gauge Defendant's speed based in part on the other vehicle Defendant appeared to be racing with, the deputies' own speed of approximately 40 mph, and because he needed to increase his speed to approximately 80 mph for close to 20 seconds in order to catch up with Defendant's vehicle. *See id*. pg. 24, lns. 6-13, pg. 33, lns. 3-9.

Defendant relies heavily on *United States v. Sowards* for his argument that these visual indications were insufficient to justify the traffic stop. *See* Supp. Mot. to Suppress, Dkt. 61, at pgs. 6-7, 9; *United States v. Sowards*, 690 F.3d 583, 587 (4th Cir. 2012). *Sowards*, however, is distinguishable in several ways. First, and most significantly, *Sowards* used the higher "probable cause" standard. *Sowards*, 690 F.3d at 588 (citing *Whren v. United States*, 517 U.S. 806, 809–10, (1996)) ( "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.). As previously stated, this is not the correct standard. *Kansas*, 140 S. Ct. at 1185.

Next, *Sowards* was factually distinguishable. First, in *Sowards*, the deputy's training was largely based on radar units, not visual estimates. *See Sowards*, 690 F.3d at 589. This issue was compounded by the fact that his estimate was only slightly in excess of the legal speed limit, 5 mph (7%) over the 70-mph legal limit. *Id*. at 591-93.

This distinction is critical as *Sowards* specifically stated that the greater the speed in excess of the speed limit, the less indicia or reliability is required to support the speed estimate and therefore the traffic stop. *Id*. at 592. In reviewing the cases cited by *Sowards*, it appears that the "slightly in excess" measure was approximately 10 or less mph over the speed limit. *See id*. In making this point, *Soward* specifically noted similar types of general indicia available to Deputy Alegria in this case. *See id*. at 592-93 (citing

*United States v. Colden*, No. 11–M–989–SKG, 2011 WL 5039777, at *1, *2 (D.Md. Oct. 21, 2011) (holding that officer's "visual estimation of defendant's speed, in combination with the officer's observations that his car shook [when defendant's car passed] and that defendant tapped his brakes, amounts to a reasonable articulable suspicion that defendant was speeding"); *United States v. Fuentes*, No. 09 Cr. 860, 2010 WL 707424, at *3 (S.D.Tex. Feb. 23, 2010) (finding reasonable suspicion where officer's visual speed was supported by additional observations—i.e., vehicle's relative speed and roaring engine—and such observations were corroborated by patrol car's video camera)).

Logically, this also means the greater the speed over the speed limit, the less precise the measurement needed to substantiate reasonable suspicion. *See United States v. Green*, 897 F.3d 173, 178 (3rd Cir. 2018). Here, Deputy Alegria estimated that Defendant was traveling at 20 mph or approximately 44% over the 45-mph posted speed limit. Transcript 1 at pg. 7, ln. 21 to pg. 8, ln. 11, pg. 12, lns. 9-11. Defendant and his expert attempt to diminish this estimate through an emphasis on mathematical calculations, but *Sowards* specifically stated this was not necessary: "[s]uch additional indicia of reliability need not require great exactions of time and mathematical skill that an officer may not have, but they do require some factual circumstance that supports a reasonable belief that a traffic violation has occurred." *Sowards*, 690 F.3d at 593.

### C. Defendant's Contemporaneous Statements and Admissions Support the Conclusion that he was Speeding

Admittedly, Deputy Alegria's visual estimate is not as accurate as a radar or the pacing methods used in many cases subsequent to *Soward*. But the final additional indicia of evidence supporting Deputy Alegria's speed estimate is Defendant's own

contemporaneous statements about his speed and his admission during cross examination that he could have been speeding.

During the bodycam video, Defendant admitted that his engine was loud and that he was traveling at "48" mph, while his own passenger can be heard stating "we were going just a little fast." *See* Dkt. 42, Exh. 5, BWC CD ("4-8 X81163715") at 0:46-52; ("6-8 X81164939") at 3:29-32.

Defendant then testified that he did in fact say he was traveling at 48 mph. Transcript 1 at pg. 49, lns. 17. He then contradicted his affidavit and his testimony that he was traveling at "the speed limit" by admitting that he did not know what the speed limit was for that area and that he could have been speeding because of this lack of knowledge. *Id*. at pg. 49 ln. 22 to pg. 50, ln. 8.[1]

As the driver of the vehicle in question, these contemporaneous statements and admissions should weigh heavily in corroborating Deputy Alegria's determination that Defendant was traveling over the speed limit that night. It is also critical because if Defendant's statement support Deputy Alegria's speed estimate, there are no other facts that Defendant can offer to rebut Deputy Alegria's observations.

### D. Mr. Gayner's Conclusions are Inherently Flawed

Perhaps in realization of his inability to rebut Deputy Alegria's observations, Defendant spent considerable time attempting to undermine Deputy Alegria through reconstruction expert Christopher Gayner. *See* Dkt. 60 ("Transcript 2"). While the United States does not challenge Mr. Gayner's expertise or methods, the calculations

---

[1] Defendant's claim in his affidavit that he was "obeying all traffic laws" was also directly contradicted by his admission on cross examination that he was driving that night with the knowledge that his license was suspended. Transcript 1 at pg. 51, lns. 23-25.

8

*Supplemental Response in Opposition to Defendant's Motion to Suppress*

21CR0107-WQH

he used are only as good as the inputs he relied upon. Because all of the numbers Mr. Gayner used were approximations or assumptions, the accuracy of his calculations are limited and they cannot provide a reliable basis for undermining Deputy Alegria's speed estimate, let alone show Deputy Alegria did not reasonably and in good faith believe that Defendant was speeding.

First, Mr. Gayner was not present for the event at issue. Indeed, Mr. Gayner never visited the site to take measurements and relied solely upon Google Earth maps. Transcript 2, pg. 32 ln. 19 to pg. 33, ln. 2. He also did not inspect either Defendant's or Deputy Alegria's vehicle and relied upon factory instead of actual performance specifications for both. *Id*. at pg. 33 lns. 3-7. He also relied solely upon the testimony of Defendant and Deputy Alegria and did not speak directly to either. *Id*. pg. 33 lns. 8-11. While he did examine the body worn camera footage, his view of the area was limited to the scope of that footage, and he could not see if any obstacles or other factors were present on the roadway. *See id*. at pg. 33 ln. 19 to pg. 34 ln. 4. Mr. Gayner also assumed unrealistic uniform acceleration and deceleration and that both individuals drove precisely at the approximate speeds they had testified to. *See id*. at pg. 36 lns. 4-23. Finally, Mr. Gayner admitted that the "human factor" was another consideration that could affect the performance of both vehicles. *Id*.

When viewed together, the flaw in Mr. Gayner's calculations are clear. Each assumption or estimate built uncertainty into his calculations. In this instance, all of Mr. Gayner's inputs are estimates or assumptions, compounding the potential margin for error in the calculations to a degree where they are simply not reliable. Mr. Gayner himself essentially admitted the inherent weakness in these multiple variables during cross examination:

> Q. So you didn't account for the fact that maybe he – the speed was maybe a little bit less than 80 miles per hour?
>
> A. Well, I am not -- I have no information to do that, so if we start doing random variations, you could end up with a thousand different hypotheticals.

*Id*. at pg. 36 lns. 4 to pg. 37 ln. 1.

The inability of Mr. Gayner to exactly recreate the incident only serves to bolster Deputy Alegria's testimony. *See United States v. Holly*, 983 F.3d 361 (8th Cir. 2020). In *Holly*, Defendant attempted to show that officers did not have reasonable suspicion to believe he failed to stop at a stop sign by eliciting testimony from a re-creation expert. *Id*. Like this case, that expert attempted to show that officers could not have observed Holly at the intersection where he was alleged to have committed the traffic violation. *Id*. at 364. Like Mr. Gayner, that expert also admitted that he could not recreate the exact circumstances of that event. *Id*. The Eighth Circuit upheld the district court's finding crediting the officers' testimony over that of the re-creation expert, including its holding that "the inability to fully replicate the circumstances the officers testified were present makes the officers' testimony more credible as to what occurred" that day. *Id*.

Because the same uncertainties exist in this case, this Court should also credit Deputy Alegria's testimony over that of the expert and find that he reasonably and in good faith believed that Defendant was speeding, justifying the traffic stop in this case.

//

//

//

//

//

10

*Supplemental Response in Opposition to Defendant's Motion to Suppress*

21CR0107-WQH

# IV

# **CONCLUSION**

For the reasons stated above, the United States respectfully requests that this Court deny Defendant's Motion to Suppress.

DATED: June 18, 2022

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

*/s/ Brandon J. Kimura*
BRANDON J. KIMURA
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DAVID LEMONT HILL,<br><br>　　　　　Defendant. | Case No.: 21CR0107-WQH<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

　　I, BRANDON J. KIMURA, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

　　I am not a party to the above-entitled action. I have caused service of United States' Supplemental Opposition to Defendant's Motion to Suppress, on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

　　Sara Peloquin, Esq.

　　I declare under penalty of perjury that the foregoing is true and correct.

　　Executed on June 18, 2022

　　　　　　　　　　　　　　　　　　　/s/ Brandon J. Kimura
　　　　　　　　　　　　　　　　　　　BRANDON J. KIMURA
　　　　　　　　　　　　　　　　　　　Assistant United States Attorney