UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 21cr107 WQH |
| Plaintiff, | **ORDER** |
| v. | |
| DAVID LEMONT HILL, | |
| Defendant. | |

HAYES Judge:

The matter before the court is the motion to suppress evidence seized in violation of the Fourth Amendment (ECF No. 40) filed by Defendant.

**FACTS**

Deputy Kenny Alegria-Rodriguez has been a deputy sheriff with the San Diego Sheriff's Department for seven years, with five of those years spent on patrol. During a normal patrol shift, Deputy Alegria spends eight to ten hours on traffic enforcement, including investigating speeding violations.

On October 9, 2020, Deputy Alegria was on patrol duty in El Cajon, California. At approximately 1:03 a.m., Deputy Alegria was traveling at approximately 40 miles per hour (mph) westbound on East Washington Avenue in an area lit by street lights. The posted speed limit was 45 mph. The deputy observed two vehicles racing side by side approaching eastbound on East Washington passing his vehicle at a high rate of speed. The deputy saw

1

the two vehicles passing his position head to head and estimated the vehicles were traveling at approximately 65 mph. The deputy immediately slowed his vehicle and turned around to travel eastbound. The deputy accelerated at a high rate of speed to try to catch up to the racing vehicles. The deputy activated his overhead lights and sirens behind one of the vehicles. The vehicle, a white Chevrolet Camaro, bearing temporary license plate number AU99N47, yielded in a few hundred feet on East Washington just east of Jamacha Road.

Deputy Alegria approached the Camaro and told the driver, identified as the Defendant in this case, that he saw him racing with another vehicle. Deputy Alegria asked Defendant for a driver's license. Defendant responded stating that he was not racing and that he was "just topping out at 48 miles an hour and that it was just the engine that was loud." (ECF No. 51 at 15).

Deputy Olguin arrived on the scene immediately to support the stop. Deputy Olguin positioned himself looking through the passenger side rear window. Deputy Olguin saw what appeared to him to be the handle of a gun and called out to Deputy Alegria "that there was a handle of a gun in the backseat" *Id.* at 16. Deputy Alegria asked Defendant to shut off the car and instructed the Defendant to exit the vehicle. After further discussion with Deputy Alegria, Defendant exited the vehicle. Defendant was handcuffed for officer safety.

After the passenger exited the vehicle, the deputies entered the vehicle, and confirmed the presence of a firearm loaded with a full, 30-round magazine. Law enforcement inquiries revealed that Defendant was a convicted felon currently on parole. Defendant was placed under arrest.

On February 19, 2021, an Information was filed charging Defendant with felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On December 20, 2021, Defendant moved to suppress evidence on the grounds that the stop violated his Fourth Amendment rights. Plaintiff United States opposed the suppression of evidence. The Court held an evidentiary hearing with testimony from Deputy Alegria, Defendant, and a reconstruction specialist.

## CONTENTIONS OF THE PARTIES

Defendant moves to suppress all evidence seized in violation of the Fourth Amendment. Defendant contends that Deputy Alegria lacked reasonable suspicion to conduct an investigatory traffic stop. Defendant asserts that he was not speeding or racing, and that Deputy Alegria lacked any cause to pull him over. Defendant further contends that the officers impermissibly prolonged the stop when they abandoned the traffic violation to investigate "what *might* be the handle of a gun." (ECF No. 40-1 at 3). Defendant asserts that the officers abandoned writing a ticket for a traffic violation to conduct a warrantless investigatory search of the vehicle.

Plaintiff United States contends that the initial stop was justified by reasonable suspicion of a traffic violation. The Government asserts that Deputy Alegria personally observed Defendant engaged in street racing and exceeding the posted speed limit. The Government asserts that the deputies were justified in removing the Defendant from the vehicle for officer safety after the Deputy Olguin reported seeing the handle of a gun in the backseat. The Government further asserts that the firearm was in plain view providing probable cause to search the vehicle and seize the firearm.

## RULING OF THE COURT

"[T]he Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Kansas v. Glover*, __ U.S. __, 140 S.Ct. 1183, 1187 (2020) (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "The officer's actions must be 'justified at its inception, and ... reasonably related in scope to the circumstances which justified the interference in the first place.'" *Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177, 185 (2004) (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)).

"While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Reasonable suspicion requires the officers

making the stop to be "aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc). "Whether reasonable suspicion exists depends upon the totality of the circumstances surrounding the stop, including 'both the content of information possessed by police and its degree of reliability.'" *United States v. Williams*, 846 F.3d 303, 308 (9th Cir. 2016) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

In *People v. Nice*, 247 Cal. App. 4th 928, 937-38 (2016), the California Court of Appeals stated,

> "An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also 'be grounded in objective facts and be capable of rational explanation.'" (*U.S. v. Lopez-Soto*, *supra*, at p. 1105.) Accordingly, a lawful traffic stop occurs when the facts and circumstances known to the police officer support at least a reasonable suspicion that the driver has violated the Vehicle Code or another law. (*People v. Miranda* (1993) 17 Cal.App.4th 917, 926, 21 Cal.Rptr.2d 785; *People v. Superior Court* (1972) 7 Cal.3d 186, 200, 101 Cal.Rptr. 837, 496 P.2d 1205; *Terry v. Ohio* (1968) 392 U.S. 1, 16–19, 88 S.Ct. 1868, 20 L.Ed.2d 889.)

In this case, Deputy Alegria is an experienced patrol officer who has spent between eight to ten hours of his twelve hour shifts on traffic patrol for the last five years. Deputy Alegria credibly testified that on October 9, 2020, he observed two vehicles racing side by side going eastbound on East Washington passing his vehicle at a high rate of speed, approximately 65 mph in a 45 mph speed zone.[1] Deputy Alegria testified that he was traveling opposite the two vehicles on a familiar road lit by street lights, that he had a clear view of the two vehicles approaching in the opposite direction, and that there were no other cars in the area. Deputy Alegria testified that he turned his vehicle around upon his observation and increased his speed to approximately 80 mph in order to catch up with the

---

[1] In addition to exceeding the posted speed limit, the deputy testified that racing on the highway was a misdemeanor violation of California Vehicle Code § 23109(a).

racing vehicles. Based upon the deputy's training and experience, and his personal observation of vehicles, the deputy had reason to believe the vehicles were engaged in street racing and exceeding the speed limit. The deputy initiated the traffic stop based upon a particularized basis for suspecting criminal activity.

At the stop, Defendant stated that he was "topping out at 48 miles an hour." (ECF No. 51 at 15). Defendant testified that he "became aware later of the speed limit." *Id*. at 50. Defendant testified at the evidentiary hearing that he did not know the speed limit on East Washington Avenue that night and that he could have been driving over the speed limit. Defendant's contemporaneous statements at the stop and Defendant's testimony at the evidentiary hearing corroborate the testimony of Deputy Alegria that he had reason to believe Defendant was traveling over the speed limit on that night.

Defendant offered the testimony of an engineer and a reconstruction specialist at the evidentiary hearing. The expert calculated the relative positions of the patrol vehicle and the Defendant's vehicle based upon the testimony of the deputy and the Defendant. Defendant's expert testified that he used the initial positions of each car and the estimated speeds provided by Deputy Alegria to conclude that "the location where the Deputy's patrol vehicle would catch up with the Camaro ... contradicts Deputy Alegria-Rodriguez's testimony … that he caught up with the Camaro at the intersection with Jamacha Road." (ECF No. 61-1 at 67). The expert opined that "the vehicles were probably traveling significantly less than 80 mph (patrol vehicle) and 65 mph (Camaro) between Jamacha Road and 3rd Street intersections." *Id*. at 68. This testimony relied upon assumptions of uniform acceleration and uniform deceleration not supported by any facts in the record, or logic and common sense. While the math may be accurate, the distance and speed used in the calculations are based upon approximations and assumptions that produce entirely unreliable conclusions regarding the speed of the vehicles. The expert, for example, assumed that the Defendant was traveling at precisely 65 mph from the first observation by the deputy until the stop. (ECF No. 61-1 at 22). The testimony in the record by the deputy and the Defendant is directly to the contrary. The deputy testified: "It took a little

while for him to slow down… I would just say it took a little while – took a little while for him to come to eventually a full stop." (ECF No. 61-1 at 104). Defendant testified: "I slowed down, gradually, you know, safely, and merged over to the left." *Id.* at 117. Each distance and speed measurement used by the expert was an estimate or an assumption. The deputy testified: "I recalled seeing both head to head, I *approximate* at 65 miles an hour." *Id*. at 77 (emphasis added).

> Defense counsel:  Can you tell me what your top speed was in attempting to catch up to the Camero?
> Deputy:  I would think – *approximately* around 80, if I remember right.  I was going pretty fast.
> Defense counsel:  Any how long were you traveling at 80 miles per hour?
> Deputy:  20 seconds, *maybe*—

*Id*. at 102 (emphasis added).

The issue before the Court is the credibility of the testimony of Deputy Alegria that he observed street racing and exceeding the speed limit upon his initial observation of the two vehicles.  The experienced deputy had a clear view of the vehicles on a lighted street. The testimony is credible and corroborated by all reliable evidence.  Defendant testified that he did not know the speed limit and that he could have been exceeding the speed limit. (ECF No. at 51 at 50).  The testimony of the expert witness does not contradict the initial observation of street racing and speeding by the deputy which formed the basis to initiate stop.  The subsequent mathematical calculations, based upon assumed and estimated speeds and distances from the initial observation to the stop, do not show that the initial observation of the deputy was suspect in any manner. The investigatory stop in this case was lawful.

"[A] lawful seizure can become unlawful if it is prolonged beyond the time reasonably required to complete that mission...." *Muehler v. Mena*, 544 U.S. 93, 101 (2005) (internal citation omitted).  After the initial stop, Deputy Olguin told Deputy Alegria that he saw "the handle of a gun in backseat." (ECF No. 51 at 16).  "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver

to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111, n.6 (1977) *(per curiam)*. "The government's 'legitimate and weighty' interest in officer safety . . . outweighs the '*de minimis*' additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle." *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (citing *Mimms*, 434 U.S. at 110-11). In this case, Deputy Alegria had reasonable grounds to remove Defendant and the passenger from the vehicle. *See Maryland v. Wilson*, 519 U.S. 408 (1977) (holding that the *Mimms* rule applied to passengers as well as to drivers).

> Under the automobile exception to the warrant requirement, … police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime, and the vehicle is readily mobile. An officer has probable cause when, under the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*United States v. Ewing*, 638 F.3d 1226, 1231 (9th Cir. 2011) (internal quotation marks and citations omitted). In this case, Deputy Olguin saw the handle of a firearm in plain view in the backseat of the movable vehicle. The totality of the circumstances presented a fair probability that a search of the vehicle would reveal evidence of a crime. *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1966) *(per curiam)* ("If the car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment … permits police to search the vehicle without more."). In this case, the vehicle was properly searched and the firearm was properly seized.

IT IS HEREBY ORDERED that the motion to suppress (ECF No. 40) is denied.

Dated: August 8, 2022

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court